UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. TEDDER, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 4:09CV1181 CDP |
| TROY STEELE, | ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM AND ORDER**

Petitioner Michael J. Tedder is currently incarcerated in the Southeast Correctional Center in Charleston, Missouri. Tedder was convicted by a jury in the Circuit Court of Washington County, Missouri, of first-degree sodomy. He was sentenced, as a prior offender, to life imprisonment.

This matter is before the Court on Tedder's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tedder raises seven grounds for relief. Six of those seven grounds are procedurally defaulted, and his final ground fails on the merits. I will therefore deny his petition for the writ.

**I.**  **Factual Background**

Tedder's conviction arose from allegations of having deviate sexual intercourse with his daughter, S.T.[1] Tedder and H.T. were married in March 1999. They had three daughters, S.T. being the oldest. The parties separated in March 2004, and H.T.'s mother, C.K., helped her care for the children. She served as S.T.'s primary caregiver for much of S.T.'s life.

In September 2004, when S.T. was around four years old, she told C.K. that "Daddy's been blowing, blowed on [victim's younger sister's] pee-pee. He just licked my butt and pee-pee but he blowed on [victim's younger sister's] and licked hers." When H.T. returned home from work and learned of this disclosure to C.K., S.T. told her that "Daddy just keeps licking my pee-pee and butt."

As a result of these allegations, C.K. spoke with the counselor at S.T.'s school. Together, the counselor and C.K. called the Missouri Division of Family Services (DFS) child abuse hotline. H.T. then took S.T. to meet with a DFS social worker, Jean Emily, who testified at trial about the interview. Emily testified that S.T. repeated to her that "Daddy licks her pee-pee and Daddy licks her butt." After this interview, Emily developed a safety plan for the family and referred S.T. to the Children's Advocacy Center of East Central Missouri (CAC).

---

[1]This recitation of facts is based on the supplemental memorandum filed by the Missouri Court of Appeals for the Eastern District with its unpublished opinion affirming the denial of Tedder's post-conviction motion.

At the CAC, S.T. met with Connilee Boehne, a forensic interviewer. Her interview with S.T. was taped, and a special investigator from the Washington County Sheriff's Department watched it simultaneously from another room. Boehne testified at trial that S.T. said her "daddy licked her pee-pee." This recorded interview was played for the jury at the trial.

S.T. started counseling with Diana Blackwell, an outpatient therapist and licensed clinical social worker at Children's Haven in Farmington. Blackwell testified at trial that S.T. repeated the same allegations to her throughout the next nine months of counseling sessions. Additionally, at the trial, S.T. testified personally. She stated that her daddy "touched her pee-pee."

After the prosecution presented its case, Tedder testified on his own behalf. He denied ever sexually assaulting his daughters, but he did admit to a prior conviction for attempted first degree deviate sexual assault. He also testified that he and C.K. have never gotten along with each other. Tedder did not present any other evidence in his defense.

## II. Procedural Background

After the jury found Tedder guilty on one count of first degree sodomy on November 17, 2005, the trial court sentenced him to life imprisonment as a prior offender. He appealed his conviction to the Missouri Court of Appeals, arguing

3

that the trial court erred in: (1) excluding evidence of previous hotline calls made by C.K.; and (2) preventing admission of a letter written from C.K. to H.T.'s boyfriend. The Missouri Court of Appeals affirmed the conviction in a per curiam unpublished opinion on April 17, 2007.

On June 13, 2007, Tedder filed a motion in the trial court for post-conviction relief under Missouri Rule 29.15. In the post-conviction motion, Tedder asserted fourteen allegations of error by the trial court and ten allegations of ineffective assistance of counsel. The motion court denied the request for an evidentiary hearing and found no probable cause for the ineffective assistance of counsel claims. Tedder appealed the denial of his motion to the Missouri Court of Appeals, asserting only one claim of ineffective assistance for failure to call two individuals named Pam Neff and Mary Neff as witnesses. On August 26, 2008, the Missouri Court of Appeals affirmed the denial of Tedder's post-conviction motion in a per curiam unpublished opinion.

## III. Grounds Raised

Tedder now seeks federal habeas corpus relief, asserting the following grounds:

(1) The trial court erred in granting the state's ninth motion in limine, which prevented defendant from presenting eight impeachment witnesses;

(2) The trial court did not have jurisdiction over the case;

(3) The trial court erred in excluding evidence of all hotline calls other than the call that initiated the investigation in this case;

(4) Tedder was denied effective assistance of trial and appellate counsel for failure to assert the trial court's lack of jurisdiction;

(5) Tedder was denied effective assistance of trial counsel for failure to prepare the case during a fee dispute;

(6) The trial court erred in denying trial counsel's motion to withdraw because it showed a conflict between Tedder and his counsel;

(7) The trial court erred in admitting evidence of Tedder's prior conviction for attempted deviate sexual assault in the first degree.

## IV. Discussion

Respondent argues that all of Tedder's asserted grounds, except Ground 3, are procedurally defaulted because he failed to raise them at each step of the state court proceedings. Regarding Ground 3, Respondent argues that it fails on the merits.

Exhaustion of Remedies and Procedural Bar: Grounds 1, 2, 4, 5, 6, and 7

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal results in abandonment of that claim. *Id*. at 1150 (citing *Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996)); *see also Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997) (citing *Lowe-Bey v. Groose*, 28 F.3d 816, 818 (8th Cir. 1994)) ("A claim that is presented to the state court on a motion for post-conviction relief is procedurally defaulted if it is not renewed in the appeal from the denial of post-conviction relief."). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id*. at 1151 (citation omitted) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)). "Fairly present" means that state prisoners are required to "'refer to a specific federal constitutional right, a particular constitutional provision, a federal

constitutional case, or a state case raising a pertinent federal constitutional issue' . . . ." *Id*. at 411-12 (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)). A state law claim raised in state court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id*. at 412 (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)).

The Supreme Court has held that a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Court explained that "'the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id*. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Furthermore, to establish actual prejudice, a petitioner must demonstrate that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In order to assert the fundamental miscarriage of justice exception, "a petitioner must make a showing of actual innocence." *Weeks v. Bowersox*, 119 F.3d 1342, 1350 (8th Cir. 1997) (citing *Schlup v. Delo*,

7

513 U.S. 298, 321 (1995)). In making a showing of actual innocence, a petitioner must both present "new reliable evidence that was not presented at trial" and "establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 1351.

In Tedder's direct appeal to the Missouri Court of Appeals, he raised only two claims. First, he asserted that the trial court erred in excluding evidence of previous hotline calls. Second, he argued that the trial court erred by denying admission of a letter from C.K. to H.T.'s boyfriend into evidence. Even though Tedder raised twenty-four claims of error in his Rule 29.15 motion, only one was raised on appeal of the denial of post-conviction relief. Tedder thereby abandoned all of the other claims in his post-conviction motion. The only argument on post-conviction appeal asserted ineffective assistance of counsel for failure to call Pam Neff and Mary Neff as witnesses in the trial. Therefore, because only the three arguments above were raised properly on direct appeal or post-conviction appeal, only those arguments may be considered for habeas review by this Court. Of those three arguments, only one was actually asserted in Tedder's petition: the exclusion of previous hotline calls from evidence.[2] Accordingly, Ground 3 in

---

[2]Ground 1 of Tedder's petition raises similar claims to those raised in the state court, but the arguments are not identical. On direct appeal, Tedder claimed that the trial court erred in excluding a letter written from C.K. to H.T.'s boyfriend, while his petition argues that the trial court erred in preventing the boyfriend himself from testifying. Additionally, in his post-

Tedder's petition may be considered for habeas relief on the merits. The other six grounds raised in Tedder's petition, however, are procedurally defaulted.

Furthermore, the petition fails to allege a sufficient exception to the procedural default requirements. None of the six defaulted claims alleges any "cause" for the default. Additionally, Tedder never makes a claim of "actual innocence" necessary to satisfy the "fundamental miscarriage of justice" exception. Because Tedder has procedurally defaulted Grounds 1, 2, 4, 5, 6, and 7 and has failed to show either "cause and prejudice" or a "fundamental miscarriage of justice," those six grounds are hereby dismissed.

<u>Exclusion of Hotline Calls from Evidence: Ground 3</u>

Respondent concedes, and this Court agrees, that Ground 3 has been exhausted within the meaning of 28 U.S.C. § 2254. I will therefore consider it on the merits, under the standards required by law.

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

---

conviction appeal, Tedder asserted ineffective assistance of counsel for failure to call Pam Neff and Mary Neff as witnesses, but his petition argues that the trial court erred in prohibiting those individuals from testifying.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In *Shafer v. Bowersox*, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."

*Lomholt v. Iowa*, 327 F.3d 748, 752 (quoting 28 U.S.C. § 2254(d)(2)) (citing 28 U.S.C. § 2254(e)(1); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

The statute's deferential standard of review, however, applies to state court resolutions of law and fact only if the state court adjudicated the prisoner's claims on the merits. *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003) (citing 28 U.S.C. § 2254(d); *Kenley v. Bowersox*, 275 F.3d 709, 711 (8th Cir. 2002)). The Eighth Circuit has acknowledged that there are no "bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits." *Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004). Rather, a court "must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." *Id*.

Where a federal constitutional question is not adjudicated on its merits in state court proceedings, the pre-AEDPA standard of review should apply. *Robinson v. Crist*, 278 F.3d 862, 865 (8th Cir. 2002). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." *Id*. at 865-66 (quoting *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987) (en banc)).

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996). Accordingly, "'only the exclusion of critical, reliable and highly probative evidence will violate due process.'" *Sweet v. Delo*, 125 F.3d 1144, 1158 (8th Cir. 1997) (quoting *Stallings v. Benson*, 26 F.3d 817, 819 (8th Cir. 1994)).

Tedder's Ground 3 raises an issue regarding the admission of evidence and does not implicate a federal constitutional right as he has not established that the outcome of his trial would have been different had the evidence been admitted. The evidentiary ruling at issue in Tedder's claim is the exclusion of prior false hotline calls made by C.K. He argues that the purpose of this evidence was to impeach C.K. and H.T. by demonstrating bias and a motive to fabricate the underlying charges. At trial, the victim testified personally, allowing the jury to assess her credibility. Also, the state presented several other witnesses to corroborate the victim's allegations, none of whom are accused of having any bias against the defendant. The Missouri Court of Appeals held that the trial court did not err in excluding this evidence. Resp't's Ex. E at 1. This Court agrees with its conclusion that Tedder was not deprived of a fair trial because it was unlikely that

the admission of this evidence would have resulted in an acquittal, given the weight of the other evidence presented by the government.

Even assuming, arguendo, that Ground 3 raises an issue of constitutional magnitude, the decision of the Missouri appellate court affirming the exclusion of this evidence is not contrary to federal law and is a reasonable application of federal law to Tedder's case. Federal Rule of Evidence 608(b) allows counsel to cross-examine witnesses regarding prior bad acts, but, "in order to avoid holding 'mini-trials on peripherally related or irrelevant matters,'" the rule "'forbids the use of extrinsic evidence to prove that the specific bad acts occurred.'" *United States v. LeCompte*, 108 F.3d 948, 951 (8th Cir. 1997) (quoting *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992)). During C.K.'s testimony, Tedder's trial counsel was permitted to ask her about prior false hotline calls but was prevented from offering any extrinsic evidence on the issue. Because the victim's allegations were corroborated by several witnesses, the credibility of C.K. and H.T. are collateral issues. Therefore, the trial court correctly declined to admit extrinsic evidence on this matter.

Because Tedder's Ground 3 raises an evidentiary issue and because he has not established that the outcome of his trial would have been different had the evidence been admitted, his claim does not implicate the federal constitutional

13

right to due process. Furthermore, the ruling of the Missouri Court of Appeals affirming the exclusion of this evidence was not contrary to federal law and was a reasonable application of federal law to the facts of Tedder's case. Therefore, Ground 3 is without merit and is thus dismissed.

## V.     Certificate of Appealability

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). I find that reasonable jurists could not differ on any of Tedder's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Michael Tedder for writ of habeas corpus [#1] pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2011.